UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-23898-CIV SEITZ/SIMONTON

GUADALUPE GALLEGO OCHOA,
et al.,

    Plaintiffs,

v.

EMPRESAS ICA, S.A.B. de C.V.,
et al.,

    Defendants.

_____/

### ORDER GRANTING, IN PART, PLAINTIFFS' MOTION TO COMPEL

This matter came before the Court on Plaintiffs' Motion to Overrule Defendant Pedro Topete Vargas' Objections & Provide Better Responses, and to Compel Production of Documents to Plaintiffs' First and Second Requests for Production of Documents (DE # 45). Defendant Pedro Topete Vargas has filed a Response (DE # 46), and Plaintiffs have filed a Reply (DE # 50). The Honorable Patricia A. Seitz, United States District Judge, has referred discovery in this case to the undersigned United States Magistrate Judge (DE # 49). After a review of the record as a whole and for the reasons stated below, the Motion is granted, in part.

I.    **BACKGROUND**[1]

As context for the parties' jurisdictional discovery dispute, a summary of their positions regarding the Court's personal jurisdiction over Defendant Topete follows.

---

[1] The Order Granting, in Part, Defendant's Motions to Quash Subpoenas Duces Tecum ("Order Granting Motions to Quash") contains a detailed summary of the background of this case (DE # 53 at 2-6), which the undersigned incorporates herein by reference. Several issues regarding the proper scope of jurisdictional discovery that are addressed in that Order overlap with issues raised in Plaintiffs' Motion. Accordingly, where indicated below, the undersigned draws from and adopts in this Order some components of the analysis set forth in the Order Granting Motions to Quash.

In the Verified Complaint, in support of personal jurisdiction over Defendant Topete, Plaintiffs assert that Topete is a Mexican national "doing business within this district, this state and/or the United States of America. On information and belief, Topete also owns and/or controls real property, bank accounts and other personal property within this district" (DE # 1 at 2).

In his Motion to Dismiss[2], Topete asserted that the Court does not have personal jurisdiction over him because exercising jurisdiction over him would offend the Due Process Clause of the Constitution (DE # 28 at 20-23). Specifically, the Motion to Dismiss stated that Topete is a Mexican national, "whose contacts with the [Southern District of Florida] are limited to vacations and the occasional business trips, unrelated to his business engagements with Plaintiffs [citation omitted]. Similarly, Topete transmits and receives only scarce correspondence to and from Florida" (DE # 28 at 21). Topete's Declaration, which is attached to his Motion to Dismiss, contained additional statements regarding his contacts with the Southern District of Florida (DE # 28-1). In the Declaration, he stated, "My contacts with the United States are limited to vacations. I do not regularly conduct business in the United States" (DE # 28-1 at 4); but he also stated, "I do not conduct business within this district, the State of Florida, and/or the United States of America" (DE # 28-1 at 3). He further asserted, "I rarely transmit or receive correspondence into and from Florida" (DE # 28-1 at 4). Finally, he contended several

---

[2] The Court has denied, without prejudice, Topete's Motion to Dismiss, with leave to refile it after the completion of jurisdictional discovery (DE # 52 at 2). The undersigned assumes, however, for purposes of this discovery dispute, that Defendant Topete maintains his contentions as set forth in the Motion to Dismiss.

Topete also moved to dismiss the Verified Complaint on other grounds as well. First, Topete contended that the Verified Complaint fails to state a claim. In this respect, he argued that the federal RICO statutes do not provide for extraterritorial application. In this case, Defendant Topete continued, the alleged enterprise is located in Mexico, and the alleged connections with Miami or the United States are minimal (DE # 28 at 8-11). Next, Topete argued that the factors considered by the Court to determine the appropriate forum counsel in favor of dismissing this case on *forum non conveniens* grounds (DE # 28 at 11-20).

2

entities named in the Verified Complaint's allegations – namely, Viabilis Holdings, Viabilis Infraestructura, S.A.P.I. de C.V. ("Viabilis Infraestructura"), Consorcio de Desarrollo Intercontinental, S.A. de C.V. ("Consorcio"), Corporacion de Desarrollo Intercontinental, S.A. de C.V. ("Corporacion") and Autovia Urbana TT, S.A.P.I. de C.V. ("ATT") do not transact business in the United States (DE # 28-1 at 3).

## II. PLAINTIFFS' MOTION TO COMPEL

### A. Plaintiffs' Position

Plaintiffs seek to compel responses to 20 requests contained in Plaintiffs' First Request for Production of Documents Relating to Jurisdiction to Defendant Pedro Topete Vargas ("First Request for Production") and to 10 requests contained in Plaintiffs' Second Request for Production of Documents Relating to Jurisdiction to Defendant Pedro Topete Vargas ("Second Request for Production").  Plaintiffs generally contend that Defendant Topete, in his Motion to Dismiss, alleged that he has inadequate contacts with this jurisdiction, including through business activities, to be subject to this Court's jurisdiction, yet Topete will not provide the requested information that will allow Plaintiffs to test Topete's claims.  While Plaintiffs identify each request, the objection and response to each disputed request, the Plaintiffs group their bases for compelling responses into a few principal arguments, as follows.

Plaintiffs contend that Defendant's general objections to discovery requests fail because they are boilerplate objections, prohibited by rule and court order.  Plaintiffs argue that Defendant fails to apply a general objection to a specific request.  Plaintiffs point out that objections must be specifically stated and contain a statement of reasons.  Otherwise, Plaintiffs conclude, Defendant's objections are meaningless.  Finally, Plaintiffs argue that Defendant Topete's claims of burdensomeness fail because Defendant fails to set forth specific information regarding the burden (DE # 45 at 7-8, 14-15).

3

Plaintiffs also assert that the requested financial account information is not protected from disclosure by statutory or constitutional privacy provisions, despite Defendant's claims.  Plaintiffs acknowledge that the general rule in Florida is that discovery of personal financial information is ordinarily limited.  Plaintiffs argue, however, that a party's personal financial information and related documents, if relevant to the disputed issues, are subject to discovery (DE # 45 at 4).  Plaintiffs continue that Defendant, despite the statements in his Declaration, appears to have had significant business ties to Florida, including as an officer or director for different Florida corporations.  Plaintiffs conclude that the information they seek is targeted discovery relating to jurisdictional matters, and that Plaintiffs need the information to test Defendant's claims (DE # 45 at 4-5).

Plaintiffs further state their position in their Reply brief.  First, Plaintiffs contend that whether a document is publicly available to Plaintiffs does not affect Defendant's obligation to produce the document if requested (DE # 50 at 2-3).  Next, Plaintiffs argue that their requests concerning the organizational structure of Art Rouge[3] are sufficiently clear, and that whether the requested information might also be in the possession of another party is irrelevant to Defendant's production obligations (DE # 50 at 3).  With regard to the requests concerning Topete's activities in Florida in connection with Art Rouge, Inc. ("Art Rouge"), Plaintiffs refute Defendant's claim that these requests have already been sufficiently satisfied in response to other requests, and further point out that Defendant fails to specify where and how these requests were previously satisfied (DE # 50 at 3-4).  As for requests regarding Defendant's ties to organized political, social and cultural activities, Plaintiffs argue that such information is highly relevant to shed light on Defendant's general contacts with this forum (DE # 50 at 4-5).  Finally, Plaintiffs

---

[3] Plaintiffs have produced documents showing that Topete was the President of Art Rouge, Inc., a Florida corporation, from July 8, 2005, through February 9, 2012.

4

assert that information regarding Empresas ICA, S.A.B. de C.V.'s ("ICA's") ownership of other corporate entities identified in Plaintiffs' Verified Complaint is relevant to jurisdictional issues because ICA has asserted that it is not subject to personal jurisdiction (DE # 50 at 5).

### B. Defendant Topete's Position

At the outset, Defendant Topete complains that, although discovery is currently limited to jurisdictional and *forum non conveniens* issues, Plaintiffs seek to obtain merits discovery (DE # 46 at 1-2). Next, Defendant organizes his objections to the requests into six categories, as set forth below.

The first category focuses on Florida public business filings, specifically, Request Nos. 7 and 14 of Plaintiffs' First Request for Production. Defendant objects to requests for public filings, arguing that the materials can be obtained directly by Plaintiffs more conveniently and cheaply (DE # 46 at 3). Because Plaintiffs can conduct their own research and easily obtain these documents, Defendant continues, his objection to these requests should be sustained.

The second category concerns the lines of authority and organizational structure of Art Rouge, and is limited to Request No. 18 of Plaintiffs' First Request for Production. Defendant objects to this request for "organizational charts" and related documents concerning control of Art Rouge, stating that the request is vague and more appropriately addressed to Art Rouge. Defendant also states, however, that he does not possess any responsive documents (DE # 46 at 4).

The third category of requests seeks information relating to Topete's business activities in Florida in connection with Art Rouge, and identifies Request Nos. 19 and 20 of Plaintiffs' First Request for Production. Defendant states that he has already produced documents responsive to these requests pursuant to other requests, and the earlier production should be sufficient to satisfy these requests (DE # 46 at 4).

5

The fourth (and largest) category of requests concerns certain financial and bank account information of Defendant Topete and other parties, and related information. This encompasses Request Nos. 22-32 and 41 of Plaintiffs' First Request for Production. Topete acknowledges that Plaintiffs are entitled to learn of the existence of accounts that are owned or controlled by Topete, but Topete argues that the specific information requested, such as balances and transaction history, impinges of Topete's privacy rights and is irrelevant to the jurisdictional issues before the Court (DE # 46 at 5-6).

The fifth category of requests relates to Topete's participation in organized political, social and cultural activities in Florida, identifying Request Nos. 42 and 43 of Plaintiffs' First Request for Production (DE # 46 at 6). Defendant simply argues that these requests are overbroad and seek personal information of Topete (DE # 46 at 6).

The sixth and final category concerns ICA's ownership (primarily, information regarding transactions of equity shares) in Consorcio, Corporacion, Viabilis Infraestructura, ATT, and Operadora Autopista Rio de los Remedios, S.A.P.I. de C.V. ("OARSA"). This category encompasses Request Nos. 1 to 10 of Plaintiffs' Second Request for Production. Defendant Topete argues that none of the requests concern jurisdictional issues but, instead, seek discovery regarding the merits of the claims. Specifically, Defendant argues that the requests relate to Plaintiffs' allegations in the Verified Complaint that ICA, Topete, and others acquired ownership of some of these entities in furtherance of a scheme to evade Mexican taxes and deprive Plaintiffs of their ownership in some or all of these entities. Thus, Defendant concludes, his objections to all of these requests should be sustained (DE # 46 at 6-7).[4]

---

[4] Plaintiffs also move to compel a response to Request No. 39 of their First Request for Production, which seeks "documents relating to any other corporate entities or businesses in Florida in which you have, or at any time had, an interest." Defendant does not address this item in his Response, nor do Plaintiffs further address the item in their Reply. The record is, therefore, unclear as to whether the parties have resolved their dispute with regard to this item. At any rate, because Defendant does not appear to

6

### III.     ANALYSIS

#### A.     Relevancy of Documents, Generally

As previously set forth in the Order Granting Motions to Quash, although the parties have not directly addressed the issue in their discovery dispute, the undersigned notes that the Court's exercise of jurisdiction over Topete must comport with the Due Process Clause of the Fifth Amendment of the United States Constitution.  *See Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).  A defendant's contacts must be sufficient to avoid offending "traditional notions of fair play and substantial justice."  *Id.* (citations omitted).  The nature of the inquiry regarding such contacts, however, depends upon whether a plaintiff is attempting to assert specific jurisdiction, as opposed to general jurisdiction, over a defendant.  *Id.*  Specific jurisdiction concerns a party's activities in the forum related to the alleged causes of action, while general jurisdiction is concerned with actions unrelated to a complaint's claims, focusing, instead, on a "showing of continuous and systematic general business contacts between the defendant and the forum state."  *Id.* at 1291, 1292 (citations omitted).

Defendant Topete's Motion to Dismiss asserted that the Court's exercise of personal jurisdiction over him is unconstitutional because it offends the Due Process Clause (DE # 28 at 20).  Specifically, Topete argued that the inconvenience that would be imposed upon him outweighs the Court's interests in exercising jurisdiction over him (DE # 28 at 21-23).  Although he does not identify the bases in the following terms, Topete appeared to argue that, in terms of general jurisdiction, he lacks the regular contacts with the forum necessary to establish jurisdiction; and, in terms of specific

---

object to Plaintiff's motion as to this item, Plaintiffs' motion is granted.  The documents shall be produced on or before August 23, 2012.

jurisdiction, all the significant activities alleged by Plaintiffs occurred in Mexico, not Florida (DE # 28 at 21-22).

The parties' arguments as to the disputed discovery, nonetheless, implicitly include claims regarding general and specific jurisdiction over Defendant Topete. For example, Defendant Topete argues, in part, that requests concerning his ties to political, social or cultural organizations in Florida are overly broad and are "part of Plaintiffs' campaign to use jurisdictional discovery as a vehicle to engage in the discovery of Topete's personal information" (DE # 46 6). Plaintiffs, on the other hand, have focused on Defendant Topete's other business and social connections with the forum, presumably in an effort to establish a basis for general jurisdiction over Topete. Discovery requests, therefore, that call for information concerning both specific jurisdiction, as well as general jurisdiction over Topete, are relevant to resolving the jurisdictional discovery issues in this case.

In this context, the undersigned turns to the disputed discovery requests.

### B.     The Specific Requests

At the outset, the undersigned is generally dismayed by Defendant's objections, in several instances throughout the First Request for Production (and especially in response to the Second Request for Production), which either attempt to incorporate as a response vague, boilerplate objections without providing a specific response, or attempt to provide a specific response "without waiving" general objections. This practice is unhelpful and unacceptable, and will not be accepted by the Court going forward.[5]

The undersigned otherwise turns to the merits of the parties' positions. Because the six categories set forth by Defendant provide a useful framework to consider

---

[5] By separate order, the undersigned has issued a general order regarding discovery objections to provide the parties more detailed guidance.

8

**Defendant's objections, regardless of the merits of such objections, the undersigned employs this framework to analyze the objections.[6]**

### 1.     First Category – Public Filings

**Defendant Topete objects to Request Nos. 7 and 14 of Plaintiffs' First Request for Production because Topete contends that the requested materials are publicly available, and Plaintiffs can obtain them directly more efficiently.  Consistent with the undersigned's ruling in the Order Granting Motions to Quash, the undersigned overrules Defendant's objection on this basis.  Whether the documents are available to Plaintiffs through due diligence does not control whether Topete should be compelled to produce them.  Moreover, for the reasons stated below (in the Fourth Category) regarding the relevance of Topete's business contacts, through other entities, with this forum, information responsive to these requests would be relevant.  Thus, Plaintiffs' Motion to compel responses to Request Nos. 7 and 14 of Plaintiffs' First Request for Production is granted.  Defendant Topete shall produce the responsive documents on or before August 23, 2012.**

### 2.     Second Category – Art Rouge Lines of Authority

**Regarding the second category (organization and control of Art Rouge), Defendant's objection, that the meaning of the commonly used term "organizational chart" is unclear, is not well-taken.  That objection, however, appears to be contradicted by the following statement later in Defendant's Response:  "[I]f any responsive documents do exist, they are not in Topete's possession" (DE # 46 at 4).  This is not sufficient, however, because he must produce documents that are under his control as well as those that are in his possession.  Since the activities of Topete with respect to Art Rouge, Inc., a Florida corporation, are relevant to the issue of personal jurisdiction, these**

---

[6] **The undersigned further notes that Plaintiffs organized their Reply, in part, in accordance with this organizational structure as well.**

documents must be produced on or before August 23, 2012, if they are within the control of Topete.

        **3.**      **Third Category – Topete's Art Rouge-Related Activities in Florida**

Regarding the third category of requests (Topete's Art Rouge activities in Florida), Defendant states that documents produced in response to earlier requests are responsive to these requests. Defendant, however, does not clarify whether *all* responsive documents have been produced, nor does Defendant identify the earlier relevant requests and the documents responsive thereto that satisfy these requests. Therefore, Defendant shall serve a response to Plaintiffs on or before August 23, 2012, that: (a) states whether all responsive documents to these requests have been produced; (b) provides all additional responsive documents, if any; and (c) states with specificity the earlier requests and related responses that purportedly satisfy these requests. Thus, Plaintiffs' Motion with regard to Request Nos. 19 and 20 of Plaintiffs' First Request for Production is granted.

        **4.**      **Fourth Category – Financial Accounts Records**

As to the fourth category of requests regarding privacy in certain banking and financial accounts information, the requests are substantially similar to those served on third-parties, which were addressed in the earlier Order Granting Motions to Quash. Thus, many of the parties' same respective arguments have been set forth. Therefore, the undersigned adopts and sets forth again the analysis that addresses these objections.

Florida protects an individual's expectation of privacy in financial records. *Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation*, 477 So.2d 544, 548 (Fla. 1985) (discussing Fla. Const. art. I, § 23); *Berkeley v. Eisen*, 699 So.2d 789, 790 (Fla. Dist. Ct. App. 1997) (noting that court orders compelling discovery constitute state action

for purposes of constitutional privacy rights). In addition to constitutional protection, Florida Statutes Section 655.059(2)(b) requires financial institutions to keep confidential nonpublic account information except upon authorization from the account holder.

Florida's constitutional and statutory protection of personal financial and banking records, however, is not absolute. "A party's finances, if relevant to the disputed issues of the underlying action, are not excepted from discovery…and courts will compel production of personal financial documents and information if shown to be relevant by the requesting party." *Friedman v. Heart Inst. of Port St. Lucie, Inc.*, 863 So. 2d 189, 194 (Fla. 2003) (citing various cases). Thus, a party's financial records, while ordinarily not discoverable, are subject to discovery if "the documents themselves or the status [that] they evidence is somehow at issue in the case." *Aspex Eyewear, Inc. v. Ross*, 778 So. 2d 481, 481 (Fla. Dist. Ct. App. 2001). Similarly, Section 655.059(2)(b) permits disclosure of nonpublic records in accordance with 15 U.S.C. § 6802, which provides for unauthorized disclosure "to respond to judicial process." Courts have interpreted this exception as providing for disclosure pursuant to civil discovery. *See, e.g., Sierra Equity Group v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369, 1371 (S.D. Fla. 2009).

In Topete's challenge to the Court's personal jurisdiction over him, he asserted that his contacts with the United States are limited to vacations and that he does not conduct business within the Southern District of Florida (DE # 28-1 at 3, 4). Plaintiffs, on the other hand, have provided information to suggest that Topete currently or previously owns and/or manages other Florida businesses (DE # 42 at 4, 6; 42-10) and, thus, has business ties to the forum that he does not acknowledge. Topete, therefore, has placed at issue his business and related contacts with this forum, which are relevant to determining the Court's personal jurisdiction over him.

Moreover, the undersigned notes that financial records can shed significant light on the relationship between a party and a forum and, thus, whether due process would

11

be offended by exercising jurisdiction over a party.  Payments and deposits often are the essence of doing business in a forum.  Thus, such records reasonably could lead to evidence of Topete's contacts with this District because they could evidence the type, extent and frequency of Topete's business in this District and, accordingly, offer relevant evidence for resolving the Court's jurisdiction over Topete, a threshold consideration in this case.  Such requests, therefore, as they concern Topete's finances, are relevant because "the documents themselves," as well as their content could reasonably shed light on the jurisdictional issue before the Court.  *See Aspex Eyewear,* 778 So.2d at 481.  Accordingly, Defendant Topete's objections on this basis to discovery Request Nos. 22-32 and 41 of Plaintiffs' First Request for Production are overruled.

The discovery requests made to Defendant Topete, however, also include requests for documents concerning several parties whom Plaintiffs contend are controlled, at least in part, by Topete.[7]  Thus, the issue before the Court is whether Plaintiffs have sufficiently alleged that Topete's involvement with a given party is sufficient enough that its records would be relevant to determining Topete's contacts with this forum.  As discussed below, with respect to certain parties, Plaintiffs have made sufficient allegations of Topete's involvement in order to warrant discovery of the parties' activities in this forum, which might be revealed in the requested bank records, to the extent that Topete possesses such records.  In short, the records could reveal Topete's management or direction of their activities in this forum.  With other parties, however, Plaintiffs have failed to demonstrate a sufficient connection to Topete to warrant the discovery at this time.  If, however, Plaintiffs can later establish a basis for seeking documents related to these other parties, Plaintiffs may request such records.

---

[7] **Specifically, the undersigned is referring to Request Nos. 26-31 in Plaintiffs' First Request for Production.**

### a. Viabilis Holdings

As detailed in the allegations of the Verified Complaint, Topete allegedly played a principal role in the formation and management of Viabilis Holdings. Allegations of Topete's involvement in this entity are also supported by Topete's Declaration, in which he states that he is a member of the Board of Directors of Viabilis Holdings, and further contends, apparently on behalf of Viabilis Holdings (and others) that Viabilis Holdings does not "operate, conduct, engage in, or transact any business in the United States" (DE # 28-1 at 2-3). Thus, Plaintiffs have alleged a sufficient basis for seeking discovery to challenge the extent of Topete's contacts with this forum through activities of this entity.

### b. Viabilis Infraestructura

Similarly, Plaintiffs have alleged sufficient involvement of Topete with Viabilis Infraestructura. The Verified Complaint alleges Topete's indirect ownership and control of this entity (DE # 1 at 3-4). Topete's alleged control included the ability to understate the entity's earnings through several means (DE # 1 at 12-15). Topete's Declaration also states, presumably on the entity's behalf, the lack of contact of this entity with the forum (DE # 28-1 at 3). Any activities of the entity in the forum, therefore, could be relevant to determining Topete's contacts for jurisdictional purposes.

### c. Art Rouge

Plaintiffs have provided evidence to support their claim that Topete served as President of Art Rouge, Inc., a Florida corporation, from July 8, 2005, to February 9, 2012 (DE # 42 at 4; 42-10). As President, Topete could have conducted or controlled any number of business activities in this forum. Thus, records relating to this entity are relevant to determining Topete's contacts for jurisdictional purposes.

### d. Galina Kvachnina

Plaintiffs contend that Galina Kvachnina has been, and continues to be, Topete's business partner in Art Rouge (DE # 42 at 6), and they present evidence to suggest that

**Kvachnina served as an officer and/or director of Art Rouge during different times in its history (DE # 42-10). Even if these allegations were true, the requested materials as they relate solely to Kvachnina are irrelevant; even if they revealed extensive contacts of Kvachnina with the forum, such evidence would not resolve whether Topete had any contact with the forum because Kvachnina's contacts could be independent of Topete's contacts. Therefore, the requests as relating to Kvachnina are irrelevant, and Defendant's objection to the extent a request calls for production of Kvachnina's bank records is sustained.**

e.   <u>TopTrust</u>

Plaintiffs have also provided evidence to argue that Topete served as the initial director of TopTrust, a Florida corporation, beginning in 2003 (DE # 42 at 4; 42-10). Therefore, similar to Topete's involvement with Art Rouge, records relating to this entity could shed light on Topete's contacts with the forum.

f.   <u>Infraestructura Intecil, S.A.</u>

Plaintiffs do not appear to have alleged any connection between Topete and this entity in the Verified Complaint. Upon a review of the record, the undersigned finds that Plaintiffs have failed to sufficiently establish a connection between Topete and this entity to provide for discovery pursuant to these requests. As noted above, if other information discovered during the course of this litigation supports a sufficient connection between Topete and this entity, Plaintiffs may request the information.

To the extent that this Order compels production of documents with regard to this fourth category of requests, Defendant Topete shall produce the requested documents on or before August 23, 2012.

### 5.     Fifth Category – Organized Political, Social and Cultural Activities in Florida

Defendant Topete objects to requests calling for information concerning his involvement with organized political, social and cultural activities in Florida, arguing that these requests are overly broad and inappropriately seek personal information of Topete. Consistent with the Order Granting Motions to Quash, the undersigned finds that the requested materials are relevant to determining Topete's general contacts with this forum, which are relevant to determining whether Topete is subject under general personal jurisdiction principles to the jurisdiction of this Court. Therefore, Defendant Topete shall respond to Request Nos. 42 and 43 of Plaintiffs' First Request for Production on or before August 23, 2012.

### 6.     Sixth Category – ICA's Ownership of Certain Entities

All of the requests in the Second Request for Production seek information concerning the ownership interests of ICA in one or more of several entities (including Consorcio, Corporacion, Viabilis Infraestructura, ATT and OARSA) identified in the Verified Complaint. The requests generally seek information concerning the purchase, sale or transfer of ownership shares in these entities; or meetings, agreements or communications relating thereto. Plaintiffs argue that the requested materials are relevant to jurisdictional discovery because ICA claims (in its Motion to Dismiss) that ICA is not a proper party to this suit, and Topete may have information relevant to this contention.

The requests contain no geographical specifications or limitations. Moreover, while the undersigned finds above that Plaintiffs have made sufficient allegations of Topete's involvement in some of these entities to warrant discovery of the parties' activities in this forum, the earlier addressed financial records requests were all limited geographically to Florida, as was the undersigned's ruling. Instead, the true intent of

Plaintiffs' requests in the Second Request for Production is made evident by their own argument; Plaintiffs argue that the requested information is relevant to test ICA's claims that it is a properly named Defendant in regard to Plaintiffs' allegations, not whether ICA is subject to personal jurisdiction (DE # 50 at 5). Thus, Plaintiffs appear to seek, as Defendant suggests, discovery geared toward the merits of Plaintiffs' claims as opposed to jurisdictional and/or *forum non conveniens* issues. The requested materials may reveal some information relevant to jurisdiction or *forum non conveniens*, but the appropriateness of these requests as written is attenuated. While these requests might help resolve Topete's involvement with these entities, they only indirectly, at best, go to information regarding Topete's or ICA's activities in this forum. Therefore, Plaintiffs' Motion to compel responses to the requests contained in the Second Request for Production is denied.

IV. **CONCLUSION**

Therefore, upon a review of the record as a whole, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion to Overrule Defendant Pedro Topete Vargas' Objections & Provide Better Responses, and to Compel Production of Documents to Plaintiffs' First and Second Requests for Production of Documents (DE # 45) is **GRANTED, IN PART**, as set forth in the body of this Order.

**DONE AND ORDERED** in Miami, Florida, on August 8, 2012.

_Andrea M. Simonton_
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished via CM/ECF to:

The Honorable Patricia A. Seitz,
    United States District Judge
Counsel of Record