UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-23898-CIV--SEITZ/SIMONTON

GUADALUPE GALLEGO OCHOA, *et al.*,

      Plaintiffs,

v.

EMPRESAS ICA, S.A.B. de C.V., *et al.*,

      Defendants.

_____/

## ORDER GRANTING MOTIONS TO DISMISS FOR FORUM NON CONVENIENS

THIS MATTER is before the Court on Defendants Empresas ICA, S.A.B. de C.V.'s

Motion to Dismiss Plaintiffs' Verified Complaint [DE-106] and Defendant Pedro Topete Vargas'

Motion to Dismiss Plaintiffs' Verified Complaint for *Forum Non Conveniens* and Failure to State

a Claim [DE-111]. This case concerns a series of transactions stemming from a highway

construction project in Mexico under a contract granted by the Mexican government (the

"Project"). Plaintiffs Guadalupe Gallego Ochoa ("Gallego") and Guadalupe Aranzazu Gayosso

("Gayosso"), Mexican citizens currently residing in the United States, allege that Defendants

created and implemented a massive scheme to defraud Plaintiffs and Mexico's governmental

authorities by understating the profits of various Mexican companies and improperly diverting the

Project's funds.

Plaintiffs filed a five-count complaint asserting claims under the Racketeer Influenced and

Corrupt Organizations Act (RICO); Florida's equivalent RICO statute, Fla. Stat. §§ 895.01, *et

seq.*; breach of fiduciary duty; misappropriation of corporate property; and unjust enrichment.

Based on a review of the motions to dismiss, Plaintiffs' Omnibus Response [DE-119],

Defendants' replies [DE 120, 122], the record, and the applicable law, the private and public

interests strongly favor Mexico as the most convenient forum to try this case. Accordingly, the motions to dismiss for *forum non conveniens* are granted as to all counts.[1]

## I.   Factual Background

### A.   The Parties

The following facts are taken from the Verified Amended Complaint [DE-77] (the "Complaint"), unless otherwise noted. Gallego is a Mexican citizen who currently resides in Miami and has been a lawful permanent resident of the United States since October 9, 2009. Pls.' Resp., at 5.[2] Gallego has rented and owned residential properties in Miami for over thirty-two years. [DE 119-2], ¶ 2. Gayosso, who is Gallego's daughter, has lived in Maimi since 2008 and is in the process of applying for a permanent U.S. resident visa. Deposition of Guadalupe Gayosso ("Gayosso Dep.") [DE 119-3, at 9]. Currently, Gayosso is living in the United States on an O-3 visa as a spouse dependent of her husband. [DE 119-2], ¶ 3. Gayosso's visa expires in 2016. *Id.*

Empresas ICA is a Mexican holding company which owns and operates a conglomerate of companies (the "ICA Group").[3] Defendant Pedro Topete Vargas is a Mexican national and owns property in this district.

### B.   The Highway Project

In November 2004, the State of Mexico granted the rights to the Project to Viabilis

---

[1] Because the Court declines to exercise jurisdiction pursuant to the doctrine of *forum non conveniens*, it does not address Defendants' remaining grounds for dismissal.

[2] However, in a letter dated November 10, 2010 and attached to the Complaint, Gallego informs the recipient of her "new residence address" in Mexico City. *See* Ex. 14 to Compl., [DE 77-14, at 8 of 31].

[3] ICA's business includes construction, infrastructure, and residential development and commercialization. *See* ICA Home Page, http://ica.com.mx (last visited Oct. 11, 2013).

Infraestructura, S.A. de C.V. ("Viabilis"), a Mexican company owned indirectly by Gallego, Gayosso, Topete, and Topete's daughter.[4]  Gallego subsequently obtained a loan of approximately US$10 Million from a Spanish bank (the "Initial Loan") to pay for the pre-contract studies relating to the Project.  The Initial Loan was secured by a mortgage on real property owned by Gallego, and located in San Juan de Teotihuacan, Mexico.

At some point in 2007, Topete and Gallego entered into an agreement with ICA granting ICA a right to an equity participation in the Project.  Pursuant to this agreement, ICA was required to pay US$20 Million (the "Entrance Fee") to Viabilis Holding, S.A. de C.V., another Mexican company owned in equal parts by Topete and Gallego.  As a result of this deal, ICA, Topete, Gallego, and Gayosso – through various Mexican corporate entities –  became the joint owners of the Project.  Gallego, Gayosso, and Topete's ownership interests in the Project were represented by Consorcio and Corporacion.  The majority of the ICA Group's shares were held by a Mexican subsidiary of ICA, Controladora de Operaciones de Infraestructura, S.A. de C.V. ("Conoisa").  In addition, as part of the deal Conoisa purchased a 50% share in Viabilis.[5]

C.     **The Ahorro Loan**

Between 2005 and 2008, Gallego met with representatives of Ahorro Corporacion ("Ahorro"), a Spanish savings and loan institution, to secure financing for the Project.  According to the Complaint, all of these meetings took place in Miami and "Topete and ICA assisted and

---

[4]  At the time it was formed, Viabilis' shareholders were  Consorcio de Desarrollo Intercontinental, S.A. de C.V. ("Consorcio") and Corporacion de Desarrollo Intercontinental, S.A. de C.V. ("Corporacion").  Gallego, Gayosso, Topete, and Topete's daughter were the sole shareholders of Consorcio and Corporacion.  Each of these entities is incorporated in Mexico.

[5]  Plaintiffs allege that in August 2007, Topete and ICA "conspired to secretly transfer" a majority ownership of Viabilis to ICA.  Compl., at 6.

supported Gallego with her negotiations with Ahorro in Miami." Compl., at 7. As a result of these meetings, in 2008 Ahorro issued a US$40 Million loan (the "Ahorro Loan") to Viabilis secured by an irrevocable guaranty trust based on 1) Gallego's real property located in Oaxaca, Mexico; and 2) Gayosso's shares of Consorcio and Corporacion.

At some point in 2009, ICA paid off the Ahorro loan without Plaintiffs' knowledge or consent. Plaintiffs allege that this decision "was made by two of ICA's senior executives, Alonso Quintana and Gabriel Concha, in New York, New York," and that the money used to pay the loan was wired from ICA's bank account, also in New York. Compl., at 8. After paying the Ahorro loan, ICA, Topete, or other unidentified persons modified the trust secured by Plaintiffs' property to permit its use as collateral for a new syndicated loan with a Mexican bank (the "Syndicated Loan"). In order to complete the trust modification, Topete falsified a power of attorney with Gayosso's signature authorizing the release of Gayosso's shares in Consorcio and Corporacion. According to Plaintiffs, "Topete and others in league with him" are currently in possession of all Corporacion and Consorcio shares, including all of Gallego and Gayosso's shares.[6]

**D.     The Carousel Scheme**

The centerpiece of Plaintiffs' case is an alleged scheme whereby ICA and Topete understated the profits of the Project-related companies, claimed expenses for services that were never completed, and improperly diverted funds related to the Project. Plaintiffs allege that in addition to defrauding Gallego and Gayosso, Defendants' "massive scheme" was also intended to defraud "Mexican federal, state and local government authorities." Compl., ¶ 13. As part of the

---

[6] Given that only Gayosso's shares were used as collateral in connection with the Ahorro Loan, it is unclear how the release of the shares in the trust affected Gallego's ownership interests in these companies.

4

Carousel scheme, ICA, Topete, Topete's attorneys, and others: (a) diverted the US$20 Million Entrance Fee funds paid by ICA to its subsidiary, Conoisa; (b) diverted funds from the Syndicated Loan for the purchase of an unrelated railway project (the "Chiapas Railway"); (c) prepared backdated promissory notes; and (d) acquired ownership and/or control of another Mexican company, Current & Current Corporation Mexico, S.A. de C.V., to further divert Project funds. Compl., ¶ 75.

### E.    Domestic RICO Violations

Plaintiffs state that "[m]ost of Defendants' fraudulent actions occurred in Miami with at least one major event in New York." Compl., ¶ 4. In particular, Plaintiffs allege that:

- ICA executives Quintana and Concha developed the secret plan to pay off the Ahorro $40 Million Bridge Loan, permitting ICA and Topete to seize the irrevocable guaranty trust for their own purposes, and with disregard for Plaintiffs' rights and interests; the plan was developed and implemented while Quintana and Concha were in New York;

- ICA and Topete met with Ahorro as early as 2006 to discuss the possibility of having Ahorro provide financing for the Project; all meetings with Ahorro occurred in Miami;

- ICA and Topete met in Miami with Gallego throughout the Project's lifetime in order to convince Gallego that all was well in Mexico, thereby inducing Gallego to stay in Miami and not return to Mexico; ICA and Topete took these actions to ensure that Gallego did not have access to the books and records of [the Project-related companies] in order to prevent her discovery of the Carousel Scheme;

- Topete diverted funds from Viabilis Holding, which at that point was half owned by Gallego, to Art Rouge, Inc., a Florida entity owned by Topete and Topete's girlfriend;

- ICA and Topete met in Miami to plan the diversion of $20,000,000 of the Syndicated Loan to pay down a loan from ICA to Viabilis Holdings for the acquisition of the Chiapas Railway;

- Between 2004 and 2008, Topete telephoned Gallego in Miami requesting Gallego to transfer money from Miami to Mexico in order to finance the Project; during this time, Gallego wired over $10,000,000 to Topete.

Compl., ¶ 101.

## II.   Legal Standard

Under the doctrine of *forum non conveniens*, a court may dismiss an action over which it has jurisdiction when it appears that the convenience of the parties and the interest of justice weigh in favor of adjudicating the action abroad. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983). The touchstone of the doctrine is convenience. *Id.* at 1307. Dismissal for *forum non conveniens* is appropriate where:

(1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;

(2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;

(3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and

(4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.

*Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1289-90 (11th Cir. 2009).

A defendant invoking *forum non conveniens* bears a heavy burden in opposing a plaintiff's choice of forum. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101-02 (11th Cir. 2004). In balancing the private interests, the presumption in favor of the plaintiff's initial forum choice "is at its strongest when the plaintiffs are citizens, residents, or corporations of this country." *Id.*, 1101. In such cases, the Eleventh Circuit Court of Appeals requires "positive evidence of unusually extreme circumstances and thoroughly convince [the court] that material injustice is manifest before ousting a domestic plaintiff from this country's courts." *Id.* at 1101-02.

However, "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1270 (11th Cir. 2009) (quoting *Piper Aircraft*, 454 U.S. at 255 n. 23). Moreover, despite the deference afforded to a plaintiff's choice of forum, when a domestic plaintiff "chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against *forum non conveniens* dismissal is diminished." *Warter v. Boston Securities, S.A.*, 380 F. Supp. 2d 1299, 1314-15 (S.D. Fla. 2004).

## III.   Analysis

### A.   Availability and Adequacy of the Forum

The defendant bears the burden of establishing that its proposed forum is both available

and adequate. *La Seguridad*, 707 F.2d at 1307.  Generally, an available alternative forum exists

when the defendant is "amenable to process" in the foreign forum. *Piper Aircraft*, 454 U.S. at 254

n. 22.  Here, both ICA, a Mexican corporation and Topete, a Mexican citizen, are amenable to

process in Mexico, consent to the jurisdiction of Mexico's courts, and agree to waive any statute

of limitations defenses.  ICA Mot., at 4, 16; Topete Mot., at 4-5.  As such, Mexico provides an

available forum.

 The next issue is the adequacy of the forum.  An adequate forum is one that is "capable of

providing some relief for a plaintiff's claims." *Pinder v. Moscetti*, 666 F. Supp. 2d 1313, 1318

(S.D. Fla. 2008).  "This relief need not be perfect as long as the forum offers some relief." *Id.*  It

is only in "rare circumstances" where "the remedy offered by the other forum is clearly

unsatisfactory," that the alternative forum may be regarded as inadequate. *Satz v. McDonnell

Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001).

 ICA and Topete offer the sworn declarations of two attorneys currently practicing in

Mexico. *See* Decl. of Luis A. Cervantes, Ex. E to ICA Mot. [DE 106-5]; Decl. of Jorge F. Bravo,

Ex. E to Topete Mot. [DE 111-5].  Taken together, these declarations constitute sufficient

evidence that (1) Plaintiffs could bring similar claims against Defendants in Mexico; (2) the

Mexican judicial system would provide adequate judicial process for Plaintiffs' claims; and (3)

Mexico's courts would provide adequate remedies to Plaintiffs if they were to prevail on their

claims.[7]

---

 [7] As ICA notes, the fact that Plaintiffs may not be able to bring their RICO claims in
Mexico does not make Mexico an inadequate forum for purposes of the *forum non conveniens*
analysis. *See Republic of Panama v. BCCI Holdings S.A.*, 119 F.3d 935, 952 (11th Cir. 1997)
("[A] plaintiff's inability to assert a RICO claim in the foreign forum does not preclude *forum
non conveniens* dismissal.").

Plaintiffs present no evidence to rebut Defendants' expert testimony.  Rather, they assert that they will not receive a fair trial in Mexico due to Topete's "substantial influence over the Mexican police and judicial system" and that Mexico does not provide jury trials.  *See* Pls.' Resp., at 6-7.  These arguments are unavailing.  First, as a matter of law, the "mere fact that the alternative forum...lacks jury trials" does not render that forum inadequate.  *Sun Trust Bank v. Sun International Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1263 (S.D. Fla. 2001).  Second, Plaintiffs do not provide sufficient support for their allegation that Topete wields "substantial influence" over Mexico's judicial system.  In the declaration attached to Plaintiffs' response, Gallego states that Topete "maintains a close relationship" with Luis Rivera, a former director of the Police of the State of Mexico.  June 7, 2013 Declaration of Guadalupe Gallego Ochoa [DE 119-1], ¶ 7.  Specifically, Gallego asserts that Topete paid Rivera US$15,000 through Viabili Holdings' account without Gallego's knowledge or consent.  *Id.*, ¶ 8.  Topete's purported bribery of a former police director, while improper and possibly illegal under Mexican law, is not sufficient to show that Mexico's judicial system suffers from severe corruption.  *See Lisa, S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233, 1237 (S.D. Fla. 2006) ("While defendants have the ultimate burden of persuasion, the forum will be found adequate unless the plaintiff has substantiated his allegations of serious corruption or delay.") (internal quotations and citation omitted).

Lastly, the fact that Gallego filed several lawsuits in Mexico in 2012, involving many of the same entities and individuals at issue in this case, severely undercuts Plaintiffs' argument that Mexico is an inadequate forum.[8]  In short, because Defendants have presented sufficient evidence

---

[8] Through her Mexican attorney, Gallego filed five lawsuits in Mexico against Topete, Consorcio, Corporacion, Viabilis Holding, and others.  *See* February 19, 2013 Declaration of Guadalupe Gallego Ochoa [DE 96-2].

that Mexico offers some relief for Plaintiffs' claims, Mexico is an adequate forum.

**B.      Private Interest Factors**

"[I]n considering the private interests of the litigants, some important considerations are: relative ease of access to sources of proof; ability to obtain witnesses; possibility of view of premises, if relevant; and 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *La Seguridad,* 707 F.2d at 1307 (quoting *Gilbert,* 330 U.S. at 508). "[T]he presumption in favor of [a U.S. plaintiff's] choice of forum" must also be applied as part of the analysis of private interests. *SME Racks,* 382 F.3d at 1102. In weighing the private interests, the Court examines the contacts between the case and the United States as a whole, and not the Southern District of Florida in particular. *See Wilson,* 590 F.3d at 1271 (11th Cir. 2009).

**1.      Ease of Access to Evidence**

Access to sources of proof is the "most important" factor in the analysis of private interests. *Ford v. Brown,* 319 F.3d 1302, 1308 (11th Cir. 2003). Assessing this access factor involves an analysis of access to proof, the cost of obtaining attendance of willing witnesses, and the availability of compulsory process for attendance of unwilling witnesses. *Id.* This analysis may require a court to identify the evidence necessary to adjudicate the claims or defenses to the claims. *See id.* "[T]he court should make a reasoned assessment as to the likely location of such proof." *Id.*

**a.      Witnesses**

In evaluating the Parties' competing lists of witnesses, the Court must analyze both the quantity and quality of the evidence. This requires a consideration of how each piece of evidence relates to the legal claims and defenses at issue in the case. *See id.*

10

Defendants list the following categories of witnesses in support of dismissal, all of whom are located in Mexico: (1) individuals and companies involved in the Project; (2) Mexican government representatives with jurisdiction over the Project; and (3) witnesses who will testify as to damages. ICA Mot., at 7.

According to ICA, two out of the three financing sources for the Project – Banco Santander Mexico and Banobras,[9] are Mexican, and the relevant loans originated in Mexico. *Id.*, at 8. Further, all thirteen (13) corporate entities relevant to the Project are Mexican, and these entities' corporate records are in Mexico.[10] *Id.*, at 1-2. ICA also points out that the individual witnesses relevant to Plaintiffs' claims, including all nine of the witnesses named in the Complaint, are citizens of or currently reside in Mexico. These include:

- Paulo Diez, an attorney for Viabilis Holdings, Consorcio, and Corporacion, who was allegedly involved in the fraudulent transfer of Plaintiffs' interest in these companies;

- Antonio Sordo Macias, ICA's employee, and later director of Viabilis Infraestructura, who "coordinated and supervised the fabrication of fraudulent invoices intended to inflate the costs of the Project, as well as to allow the transfer of funds to corporations controlled by Topete, all with the intent of unlawfully avoiding VAT taxes, as well as the diversion of the Entrance Fee to Conoisa." [DE-25, at 11];

- Enrique Aguilar, a director of Viabilis Infraestructura who participated in and thus has direct knowledge of the Carousel Scheme;

- Juan Manuel Gonzalez Bernal and Roberto Rios, ICA's attorneys at White & Case, LLP's Mexico City office, who "proposed, described, and designed the process to be followed for the Carousel Scheme." *Id.*, at 11-12;

---

[9] Banobras is financial institution controlled by the government of Mexico for the purpose of extending financing for infrastructure projects. ICA Mot., at 8.

[10] These entities are: ICA, Conoisa, Viabilis Holding, Consorcio, Corporacion, OARSA, Viabilis Infraestructura, ATT, Current & Current, Invex, Banobras, Banorte, and Chiapas Railway.

- Alonso Quintana Kagawe and Gabriel Concha, two senior ICA executives who were actively involved in the execution of the Carousel Scheme, including paying off the Bridge Loan without Plaintiffs' consent;

- Gabriela Topete, Topete's daughter; and

- Carlos Mendez Bueno, Viabilis Infraestructura's board member.

*See* ICA Mot., at 2; Topete Mot., at 9-10.  In addition, each of the subcontractors who assisted the Parties with the Project are in Mexico and, to the extent they relate to Plaintiffs' claims, their activities took place entirely in Mexico.  *Id.*, at 9.

Plaintiffs list ten witnesses, including: (a) an unspecified agency hired by Gallego to investigate Defendants; (b) Miguel Cabetas, Ahorro's former representative in Miami;[11] (c) Rafael Eguia, an employee in Ahorro's Miami offices; (d) Alfonso Goyaneche, an Ahorro employee who replaced Cabetas after his departure and was involved in the preparation of the Ahorro Loan; (e) Dora Conseco, Cabetas' secretary; (f) Agustin Garcia and Efrain Gonzalez, two former employees of Caixa Galicia, the entity responsible for extending the initial loan on the Project; (g) "Nico," an individual who referred Plaintiffs to an investigating company; (h) Kristen Weeks, who has performed work for Topete in the past; (i) Mauricio Abascal, Plaintiffs and Topete's mutual friend, who resides in Massachusetts; and (j) Carlos Mendez, Jr., the son of ICA executive Carlos Mendez, who, according to Gallego, "lives in one of the northern states of the United States."  Gallego Dep., at 102-07.  Plaintiffs also assert that Topete and Alonso Quintana own properties in Miami and frequently visit Miami.

---

[11]  Gallego testified that Cabetas no longer resides in Miami and has moved to Spain. Deposition of Guadalupe Gallego ("Gallego Dep.") [DE 119-2], at 102:15-17.

### b.     Physical evidence

Defendants contend that all of the significant documents relating to the implementation of

the Project and the Carousel Scheme are in Mexico.  These include: Mexican government records

pertaining to the Project's implementation and progress; the records of the various companies

participating in the Project and the Carousel Scheme; evidence regarding the Project's financing;

correspondence and other communications between the individuals who developed and

implemented the Carousel Scheme; and evidence relating to Plaintiffs' damages. *See* ICA Mot., at

4.

Plaintiffs respond that the central event giving rise to Defendants' subsequent fraudulent

activity – the extension of the Ahorro Loan – occurred in Miami.  Moreover, Plaintiffs assert that

ICA and Topete participated in "significant meetings" in Miami relating to the negotiation of the

Ahorro Loan.  They also argue that Defendants' plan to pay off the Ahorro Loan without Plaintiffs'

consent originated in the United States and, more generally, that the "critical planning and

financing of Defendants' scheme occurred in Miami." Pls.' Resp., at 12.  Plaintiffs state further

that they already have "a significant portion" of the relevant physical evidence in electronic format,

and that it is unlikely that many key documents are in Mexico given Topete's testimony that

documents relating to the Project stored in his office in Mexico were lost in a flood . *Id.*, at 12.

### c.     Weighing the access-to-evidence factors

In weighing the access to evidence factors, the Court looks at both the witnesses and

documentary evidence, including documents and records relating to damages, analyzing their

contacts between the case and the whole United States.  Here, both the quantity and the quality of

the physical evidence strongly favor the trial of this case in Mexico.  The Carousel Scheme took

place largely in Mexico, and the initial evidence uncovered in Plaintiffs' investigation of the

scheme was found in Mexico. *See, e.g.*, Compl., ¶ 69 ("As a result of their investigation, Gallego and Gayosso discovered that since 2007, ICA, Topete, and Diez...had organized and maintained a massive scheme to defraud various Mexican federal, state and local government authorities."). In fact, Plaintiffs repeatedly emphasize that Defendants' activities defrauded not only Plaintiffs, but also Mexican governmental authorities. *See* Compl., ¶¶ 66, 69-70, 77, 86.

Moreover, Defendants' witness list clearly pertains to the fraudulent conduct of Defendants and other third parties located outside the United States. Plaintiffs allege that the Carousel Scheme was

> composed of a self-created group of closely-held companies controlled by ICA, Topete, Diez and others, including Viabilis Holdings, Consorcio, Corporacion, Viabilis Infraestructura, ATT, the Chiapas Railway, and various Subcontractors, to intentionally and falsely understate profits to their benefit and to the detriment of taxing authorities of Mexican federal, state and local government, as well as to their investors, in the United States and Mexico, including Gallego and Gayosso.[12]

Compl., ¶ 70. Taking as true the allegations that certain meetings, phone calls, and other communications with Plaintiffs occurred in the United States, this case involves conduct occurring primarily in Mexico, and would necessarily require the examination of records and witnesses in Mexico.

Plaintiffs' assertion that "nearly half" of the witnesses material to this case are in the United States finds little support in the record. Plaintiffs' proposed witness lists, consisting of forty-seven (47) witnesses, lacks details as to the substance of their knowledge and thus makes it difficult for the Court to discern their significance.[13] *See* [DE 119-1]. Moreover, to the extent Gallego

---

[12] Plaintiffs fail to identify any other investor in the United States, apart from Gallego and Gayosso, who was impacted in any way by Defendants' actions.

[13] Many of the witnesses listed did not appear in the Complaint or in Plaintiffs' RICO case statement.

14

described the role of several of these witnesses in her deposition, the quality of these witnesses is insufficient for this Court to retain jurisdiction. Of the nine individuals identified by Gallego, four are Ahorro employees or executives with knowledge as to only one relevant issue – *i.e.*, the extension of the Ahorro Loan. It is also unclear what the testimony of "Nico," Kristin Weeks, and Mauricio Abiscal would add to this case. Furthermore, the fact that Topete and Quintana own properties and visit Miami frequently does not tip the balance of conveniences in Plaintiffs' favor. Regardless of these witnesses' contacts with the United States, it is undisputed that they are Mexican nationals currently residing in Mexico. Thus, taking the Parties' witness lists together, the location of the witnesses supports trying this case in Mexico.

Likewise, the location of the physical evidence also favors Mexico as the proper forum. This is a document-intensive suit requiring the examination of the corporate records of a number of Mexican companies, the public filings of these companies with the Mexican government, and the reports and observations of Mexico's authorities regarding the operation of these companies. In fact, the cornerstone of Defendants' alleged fraudulent scheme is that they "induced Gallego and Gayosso to become shareholders in several businesses *created to obtain and perform a public infrastructure contract for the Mexican government*...." Compl., at 1-2 (emphasis added). The offices and physical records of these companies are in Mexico. The Project itself was created for the Mexican public and was funded in large part by public funds. Notably, most, if not all of the relevant documents are in Spanish. *See Aldana*, 578 F.3d at 1294 ("the need to translate documents, and other linguistic barriers" favor a *forum non conveniens* dismissal). Put simply, the balance of conveniences points strongly towards trying this case in Mexico.[14]

_____

[14] Plaintiffs' contention that they are already in possession of many of the relevant documents is unavailing. As noted previously, this case concerns at least thirteen Mexican

The cost of obtaining the relevant evidence and this Court's limited ability to compel the attendance of unwilling witnesses also weighs in Defendants' favor. Because "the presentation of live testimony is essential to a fair trial," a forum's relative ability to compel the attendance of unwilling witnesses is an important factor in the *forum non conveniens* analysis. *Perez-Lang v. Corporacion de Hoteles, S.A.,* 575 F. Supp. 2d 1345, 1351 (S.D. Fla. 2008); *see also Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996) ("the unavailability of compulsory process to secure attendance of [foreign] witnesses in a court in this country" weighs in favor of dismissal). If this case were to be tried in Miami, the Parties would have to incur the travel costs of at least nine essential third-party witnesses outside the jurisdiction of this Court.[15] Given Plaintiffs' allegation that these witnesses were either directly involved in the Carousel Scheme or have direct knowledge of its planning and implementation, it is likely that a number of them would not agree to appear voluntarily. Similarly, to the extent any of these witnesses are currently employed by Defendants, it is also unlikely that they would be willing to appear voluntarily to testify as to their employer's alleged participation in a massive fraud.

The burdens associated with transporting willing witnesses would also be substantial. Plaintiffs do not dispute that most, if not all, of the witnesses are native Spanish speakers.[16] Although Defendants could obtain some of the relevant testimony in the form of a videotaped

---

companies and various Mexican government agencies purportedly affected by the Carousel Scheme. Accepting as true that the electronic documents in Plaintiffs' possession are voluminous, given the breadth of Defendants' alleged fraud and the number of participants, it is likely that many more documents remain to be unearthed in Mexico.

[15] These witnesses are: Paulo Diez, Antonio Macias, Enrique Aguilar, Juan Gonzalez, Roberto Rios, Alonso Kagawe, and Gabriel Concha.

[16] Notably, both Gallego and Gayoso requested the assistance of a interpreter in their depositions.

deposition, the fact that this testimony would require translation supports dismissal. *See Callasso v. Morton & Co.*, 324 F. Supp. 2d 1320, 1331 (S.D. Fla. 2004) (in granting dismissal based upon *forum non conveniens*, concluding that the likelihood of substantial testimony in Spanish supports dismissal). Further, it would be far more convenient for the documents relevant to this case to be produced as part of a legal proceeding before Mexico's courts, without requiring translation or the use of the Hague Convention protocols. Thus, on balance, the access-to-evidence factors strongly favor Defendants.

### 2.    View of the Premises

Defendants argue that, if this case were to be tried in the United States, it would be unreasonably burdensome for the Court or jury to view the Project site. *See* ICA Mot., at 11. However, as Plaintiffs point out, it is Defendants' "fraud in connection with the *financing*" of the Project that is at the heart of this lawsuit. Pls.' Resp., at 11 n. 6. Because a view of the Project site is immaterial to Plaintiffs' fraud claims, this factor is not entitled to any weight in the consideration of the private interest factors. *See King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381 (11th Cir. 2009) (noting that view of the premises is an important consideration for purposes of *forum non conveniens* only "if view would be appropriate to the action.").

### 3.    Plaintiffs' Fear of Litigating the Case in Mexico

Plaintiffs assert that they chose not to litigate this case in Mexico "because they live in grave and daily fear" of being harmed by Topete. Pls. Resp., at 6.[17] Gayosso testified that during a visit to Topete's Mexico offices, Topete told her that he "wanted to destroy" Gallego. Gayosso

---

[17] Plaintiffs' fears are "an appropriate consideration in assessing whether private interest factors favor a *forum non conveniens* dismissal." *Aldana*, 578 F.3d at 1302 n.2 (Kravitch, J., dissenting) (quotation and citation omitted).

Dep., at 107:24-25.  In addition, Kristin Weeks, Topete's former assistant, stated that during a lunch meeting in a Miami restaurant Topete told her that he was "going to destroy Guadalupe" and that "he wants her gone."  Weeks Aff. [DE 119-4], ¶ 6.  Gallego also testified that during an argument with her son Augusto, Topete specifically threatened Gallego's life, and that she did not report these threats due to Topete's "considerable influence" over Mexico's police and judicial system.  Gallego Decl. [DE 119-1], ¶¶ 6,7.

While the Court is sympathetic to how distressing these statements may be to Plaintiffs, they do not tip the balance of conveniences in Plaintiffs' favor.  First, taking as true the fact that Topete travels freely and frequently between the United States and Mexico, he could carry out his threats even if the case remains in this district.  Second, as described in § III.A., Gallego's statement that Topete bribed a former police officer, while disturbing, is by itself not enough to establish that he "wields considerable influence" over Mexico's law enforcement and judicial system. *See supra*, at 9.  Third, it appears that there are no facts showing that Topete has acted in any way to physically harm Plaintiffs or anyone else, either in connection with this case or otherwise.  As such, Plaintiffs' argument that this Court should retain jurisdiction based on their fear for their personal safety is not a dispositive factor in the *forum non coveniens* analysis.

**4.      All Other Practical Problems Preventing the Trial from Being "Easy Expeditious, and Inexpensive"**

Another important private interest factor concerns Defendants' ability to implead other potentially liable third parties. *See Morse v. Sun Intern. Hotels, Ltd.*, 2001 WL 34874967, at *4 (S.D. Fla. Feb. 26, 2001) (citing *Piper Aircraft*, 454 U.S. at 259–60).  The Court looks "to the various theories of recovery in order to determine whether the joinder of [a] potential third-party is in fact crucial to the defendant's case, and also to assess whether separate trials in different forums

18

will require duplication of proofs or create the possibility of inconsistent verdicts." *Sun Trust*, 184 F. Supp. 2d at 1264.

The key non-party participants in the Carousel Scheme are in Mexico, and include: (1) ICA's executives Alonso Quintana and Gabriel Concha; (2) Paulo Diez, who along with Topete and Diaz, orchestrated the Carousel Scheme; (3) ICA's White & Case attorneys in Mexico, including Bernal and Rios; and (4) Enrique Aguilar and Antonio Sordo Macias, two Viabilis Infraestructura directors who directly participated in the scheme. *See* Topete Mot., at 9-10. Although Defendants state generally that they would be unable to implead third parties if this case is tried in the United States, they fail to identify any such third parties or their significance to this case. Thus, while this factor supports a dismissal, it does so only slightly.

### 5.   Balancing the Private Interest Factors

Based on the foregoing analysis, the factors relating to access-to-evidence and Defendants' inability to implead third parties clearly favors a dismissal on *forum non conveniens* grounds. As always, the Court must balance these factors with Plaintiffs' choice of forum. *SME Racks*, 382 F.3d at 1102 ("the presumption in favor of [a U.S. plaintiff's] choice of forum...is to be applied specifically when weighing the private interests."). This presumption requires a defendant to present "positive evidence of unusually extreme circumstances" sufficient to convince the Court that a "material injustice is manifest" before denying a U.S. citizen access to the courts of his country. *Id.* However, Plaintiffs' choice of forum is not dispositive. Rather, the Supreme Court's *forum non conveniens* cases "have repeatedly emphasized the need to retain flexibility" and have underscored that "each case turns on its facts." *Piper Aircraft*, 454 U.S. at 249.[18]

---

[18] Arguably, the significant presumption in favor of a domestic plaintiff's choice of forum does not apply to Gayosso, who has lived in Miami for approximately five years but does

Under the facts of this case, Defendants have offered sufficient evidence to overcome the presumption in Plaintiffs' favor, thus meeting the Defendants' burden of persuasion.[19] Topete and ICA are Mexican and currently reside in Mexico. In light of Plaintiffs' fraud, misappropriation, and unjust enrichment claims, the witnesses and evidence essential to this case are in Mexico. Additionally, and as noted above, Defendants inability to implead potential third parties if the Court retains jurisdiction also favors dismissal. Moreover, the record does not support Plaintiffs' argument that this Court should retain jurisdiction due to Topete's threats against Gallego. In conclusion, having considered the relevant private interest factors, and taking into consideration the presumption in favor of Plaintiffs' choice of forum, the Court finds that the private interest factors strongly support dismissing this case for *forum non conveniens*.

### C.      Public Interest Factors

Private interest factors are "generally considered more important than the public factors." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). Nonetheless, "the better rule is to consider both factors in all cases." *Id.* These factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in the application

---

not yet have a permanent U.S. resident visa. *See* Gayosso Dep., at 8-9. Because dismissal is proper even under the heightened *SME Racks* standard, the Court treats Gayosso as a lawful U.S. resident for purposes of this Order.

[19] Plaintiffs' reliance on this Court's Order in *Van Hoy v. Sandals Resort Int'l, Ltd.*, 2013 WL 1192316 (S.D. Fla. Mar. 22, 2013), is misplaced. In *Van Hoy*, the majority of the defendants – in addition to all of the plaintiffs – were United States citizens. More importantly, the claims and defenses at issue in that case required access to substantial evidence found exclusively in the United States. Here, virtually all of the essential witnesses, as well as much of the potentially relevant documentary evidence, is in Mexico. As such, *Van Hoy* is factually distinguishable.

of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."

*Piper Aircraft*, 454 U.S. at 241 n.6. The Court considers each factor *ad seriatim*.

### 1.    Administrative Congestion

ICA contends that the "busy nature" of this Court's docket favors dismissal. ICA Mot., at

13. However, "the fact that the Southern District of Florida has one of the busiest dockets in the

United States is entitled to little or no weight in the analysis.'" *Campbell v. Starwood Hotels &*

*Resorts Worldwide, Inc.*, 2008 WL 2844020, at *8 (S.D. Fla. July 23, 2008). Based on the

foregoing, although this public interest factor favors Defendants, it does so only slightly.

### 2.    The Local and Sovereign Interests

The following facts support a finding that there is a localized interest in retaining

jurisdiction over this case. First, Gallego and Gayosso currently reside in the United States.

Moreover, from 2005 to 2008 Gallego, ICA, and Topete met at Ahorro's Miami offices to negotiate

the terms of the Ahorro Loan. ICA and Topete met with Gallego several times to discuss the

Project's progress. On multiple occasions, Topete called Gallego to give her updates on the

Project. According to Plaintiffs, Topete diverted funds from Viabilis Holding to Art Rouge, Inc., a

Florida company owned by Topete and his girlfriend. Representatives of ICA met with Topete to

plan the diversion of US$20 Million to pay down loan from ICA to Viabilis Holdings for the

acquisition of the Chiapas Railway. *Id.*

On the other hand, although Topete and at least one ICA executive own property in this

district, ICA is a incorporated and does business in Mexico through its subsidiaries, and Topete is a

Mexican citizen currently residing in Mexico. Moreover, as described above in detail, the majority

of the events relevant to the Carousel Scheme took place in Mexico, involved Mexican parties, and

were intended to harm not only Plaintiffs but also Mexican tax authorities. Thus, while Plaintiffs

21

have presented some facts supporting a localized interest in this dispute, Mexico's interests appear to be comparatively greater.

Defendants argue that dismissal is proper because the interests of Mexico in resolving this dispute heavily outweigh those of the United States. The Eleventh Circuit Court of Appeals has made clear that "'[t]here is a strong federal interest in making sure that plaintiffs *who are United States citizens* generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction.'" *SME Racks, Inc.*, 382 F.3d at 1104 (emphasis supplied). As part of this analysis, "federal courts...do not focus on the connection between the case and a particular state, but rather on the connection of the case to the United States as a whole." *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1303 (11th Cir. 2002).

Plaintiffs assert that the United States has a strong interest "in protecting its (permanent) residents from overly powerful and well-connected foreigners who reached deep into this jurisdiction to swindle them, only to pretend later that they are strangers to this place." Pls. Resp., at 20. This argument is unpersuasive. First, the "strong federal interest" in protecting a United States citizen's choice of forum does not apply here as Gallego and Gayosso are not U.S. citizens. Second, while ICA and its subsidiaries may conduct business in the United States, ICA and Topete are Mexican citizens currently residing in Mexico. Third, based on the Complaint, the entire purpose of the Carousel Scheme was to defraud Mexico's government as well as Plaintiffs. *See* Compl., ¶¶ 70 ("The scheme was composed...to intentionally and falsely understate profits to [Defendants'] benefit and to the detriment of taxing authorities of Mexican federal, state and local governments, as well as to their investors, in the United States and Mexico, including Gallego and Gayosso."). In other words, this case involves a fraud committed by citizens of Mexico against

other Mexican citizens (*i.e.*, Plaintiffs) and Mexico's government.  Under these facts, Mexico's interests are clearly substantial.

### 3.    Burdens Associated with Jury Duty and the Application of Foreign Law

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *SME Racks*, 382 F.3d at 1101.  However, the burden of jury duty is "a lesser weighted factor." *Matthews v. Whitewater West Industries, Ltd.*, 2012 WL 1605184, *12 (S.D. Fla. May 8, 2012).  Mexico's interests in resolving this dispute, involving Mexican citizens and fraudulent acts committed in large part in Mexico, are greater than those of the United States.  Under the facts of this case, it is also likely that Mexican law would apply to Plaintiffs' misappropriation, breach of fiduciary duty, and unjust enrichment claims, creating an unfair burden to potential jurors by asking them to apply foreign law.  Accordingly, these factors also favor dismissal.

### 4.    Balancing the Public Interest Factors

As with the private interest factors, the public interest factors also support Defendants' position.  Gallego and Gayosso are not U.S. citizens, and thus the interest of the United States in protecting their choice of a domestic forum is not at play. *Cf. Van Hoy v. Sandals Resort Int'l, Ltd.*, 2013 WL 1192316, *13 ("[T]he interests of the United States are strong" where "Plaintiffs are U.S. citizens and seven out of eight Defendants are U.S. entities.").  Moreover, although this district's administrative congestion does not afford Defendants much additional support, Mexico's interests in adjudicating a dispute concerning a "massive scheme" by Mexico's citizens against their fellow citizens and the Mexican government substantially outweigh the United States' interests arising from the activities that took place in the United States in connection with the Carousel Scheme.

Therefore, Defendants have met their burden of persuading the Court that the public interest factors support dismissing this lawsuit for *forum non conveniens*.

### D.     Reinstatement of Suit

In its *forum non conveniens* analysis, the Court must also consider whether Plaintiffs can reinstate their suit in the alternate forum without undue prejudice or inconvenience. *Wilson*, 590 F.3d at 1269.  Here, Defendants have attested that they will submit to the jurisdiction of a Mexican court in this matter and will not raise an objection based on statute of limitations. Accordingly, the Court finds that Plaintiffs can reinstate their suit in Mexico without undue prejudice or inconvenience.

## IV.     Conclusion

Having considered the relevant private and public interest factors, and taking into consideration the deference afforded to Plaintiffs' choice of a domestic forum, the Court concludes that this case should be dismissed for *forum non conveniens*.  Accordingly, it is

ORDERED that

1.      Defendants Empresas ICA, S.A.B. de C.V.'s Motion to Dismiss Plaintiffs' Verified Complaint [DE-106] is GRANTED to the extent that it seeks dismissal of the Verified Amended Complaint on *forum non conveniens* grounds and is otherwise DENIED as MOOT.

2.      Defendant Pedro Topete Vargas' Motion to Dismiss Plaintiffs' Verified Complaint for Forum Non Conveniens and Failure to State a Claim [DE-111] is GRANTED to the extent that it seeks dismissal of the Verified Amended Complaint on *forum non conveniens* grounds and is otherwise DENIED as MOOT.

3.      Plaintiffs' Verified Amended Complaint [DE-77] is DISMISSED WITHOUT PREJUDICE subject to the following conditions:

    a.       Defendants Empresas ICA, S.A.B. de C.V. and Pedro Topete Vargas must consent to submit to Mexican jurisdiction, to receive service of process from the Mexican court, to waive any statute of limitations, venue or jurisdictional defenses, to make relevant witnesses and documents available to a Mexican court, and to respect the final judgment of a Mexican court.

    b.       If Plaintiffs are unable to reinstate this action in Mexico and such decision is affirmed by the highest court in Mexico, then upon the filing of an appropriate motion, this Court will reactivate this action.

4.      All other pending motions are DENIED AS MOOT, and this case is CLOSED.

DONE and ORDERED in Miami, Florida, this 17th day of October, 2013.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE